974 P.2d 1082

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Omi PANTOJA, Defendant–Appellant**

**No. 21033.**

Intermediate Court of Appeals of Hawai'i.

Feb. 26, 1999.

---

William A. Harrison (Harrison & Matsuoka, of counsel) on the brief for defendant-appellant.

Andrea Low, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief for plaintiff-appellee.

BURNS, C.J., WATANABE and ACOBA, JJ.

Opinion of the Court by WATANABE, J.

In this appeal, Defendant–Appellant Omi Pantoja (Defendant) contends that the District Court of the First Circuit (the district court) erred when it (1) determined that she was a subsequent prostitution offender for mandatory enhanced sentencing purposes and (2) imposed a mandatory enhanced sentence upon her despite the lack of evidence that she was represented by counsel or knowingly waived representation at the time of her prior prostitution conviction. We disagree with Defendant's first contention but agree with her second contention. Accordingly, we vacate the sentencing portion of the district court's September 9, 1997 Judgment and remand for resentencing.

## BACKGROUND

Following a bench trial on August 21, 1997, Defendant was found guilty of committing the offense of prostitution, in violation of Hawai'i Revised Statutes (HRS) § 712–1200(1) (1993).[1] Defendant testified in her

---

1. Hawai'i Revised Statutes (HRS) § 712–1200(1) (1993) states: "A person commits the offense of

own defense at trial and stated that her full name was "Omi Pantoja." Her attorney addressed her during the course of the trial as "Miss Pantoja."

At Defendant's sentencing hearing, Plaintiff–Appellee State of Hawai'i (the State) sought to have Defendant mandatorily sentenced as a subsequent prostitution offender.[2] Towards this end, the State introduced into evidence a copy of a two-page "Offender Identification Summary" (abstract) for "Omi Pantoja." The abstract, dated August 21, 1997, was certified by the Administrator of the Hawai'i Criminal Justice Data Center to be "a criminal history record check completed on the State [Offender Based Tracking System/Computerized Criminal History] (OBTS/CCH) system."

Defense counsel objected to the introduction of the abstract to establish that Defendant had a prior prostitution conviction, stating:

> Your Honor, if the Court's thinking to sentence [Defendant] as a second offender, we'd object. And, basically, the objection is that the State has only introduced into evidence at this point in time what appears to be an abstract indicating an individual with the same name as [Defendant], who was previously convicted for the offense.
>
> However, there's been no proof that this individual before the Court is the same individual that's—the abstract's applicable to.

The district court, however, ruled as follows:

> THE COURT: All right. The Court is in receipt of the certified abstract of one, Omi Pantoja [Defendant], social security

number 103–56–2260, setting forth the [D]efendant's conviction history for this offense in violation of [HRS] Section 712–1200. And, the Court is prepared to sentence the [D]efendant in something other than a first conviction.
>
> The sentence is $500.00 (five hundred dollar) fine and 30 (thirty) days [sic] imprisonment. Mittimus to issue forthwith.

This appeal followed.

## DISCUSSION

I. Whether There Was Sufficient Evidence to Establish that Defendant Had a Prior Prostitution Conviction.

### A.

At the time that Defendant was convicted below, HRS § 712–1200(4)(b) mandated that she receive a stiffer (enhanced) sentence as long as she had previously been convicted of prostitution.

■ "It is axiomatic that when an enhanced punishment for a particular criminal offense is sought because of a prior conviction, the present defendant must be the same person who was previously convicted. It necessarily follows that proof of such identity is an essential part of the case for the prosecution[.]" Annotation, *Evidence of Identity for Purposes of Statute as to Enhanced Punishment in Case of Prior Conviction*, 11 A.L.R.2d § 2, at 872 (1950).

In cases involving the applicability of a statute authorizing enhanced punishment upon proof of the defendant's previous con-

---

prostitution if the person engages in, or agrees or offers to engage in, sexual conduct with another person for a fee."

2. At the time that Defendant–Appellant Omi Pantoja (Defendant) was convicted of and sentenced for the offense of prostitution in this case, HRS § 712–1200(4)(a) (1993) set forth the following sentence for a first-time prostitution offender:

> [W]hen the court has not deferred further proceedings pursuant to chapter 853, a mandatory fine of $500 and the person may be sentenced to a term of imprisonment of not more than thirty days; provided, in the event the convicted person defaults in payment of the $500 fine, and the default was not contumacious, the

court may sentence the person to perform services for the community as authorized by section 706–605(1).

HRS § 712–1200(4)(b) (1993) further provided that a person convicted of committing prostitution shall be sentenced for "any subsequent offense" as follows:

> For any subsequent offense, a fine of $500 and a term of imprisonment of thirty days, without possibility of deferral of further proceedings pursuant to chapter 853 and without possibility of suspension of sentence or probation.

The foregoing provisions were subsequently amended in 1998.

viction, courts in other jurisdictions have taken two distinct approaches in determining whether evidence that the defendant has the identical name as a defendant in a prior prosecution is sufficient proof of a prior conviction. Annotation, 11 A.L.R.2d § 7, at 884. "One line of authorities holds that identity of name of the defendant and the person previously convicted is prima facie evidence of identity of that person, and, in the absence of rebutting testimony, supports a finding of such identity." *Id.* The other line of authorities holds that "the identity of the accused and the one against whom the former judgments were entered must be established by affirmative evidence, mere proof of identity of names not being sufficient." *Id.* § 9, at 887.

In *State v. Nishi*, 9 Haw.App. 516, 528, 852 P.2d 476, 482 (1993), *reconsideration granted*, 9 Haw.App. 660, 853 P.2d 543 (1993), this court held that a person's certified traffic abstract issued by the traffic violations bureau, which included "not only the person's name, but also the person's driver's license number, which is identical to the person's social security number, and the person's date of birth ... is adequate to connect a defendant with a prior conviction." *Id.* at 527, 852 P.2d 476. However, we also concluded that the defendant had been erroneously sentenced as a second-time offender because the prosecution had failed to submit any evidence to show that the defendant was the same person who had been previously convicted, as shown on the certified copy of a traffic abstract submitted to the court. In so holding, we stated:

> Unless conceded by the defendant, the State is required to show, by evidence satisfactory to the court, the fact of the defendant's prior conviction. Thus, the State must satisfactorily identify the defendant being sentenced to be the same person who was previously convicted.
>
> Although we have stated above that a certified copy of a traffic abstract is satisfactory evidence to establish a prior No No–Fault Insurance conviction, the record discloses no evidence to tie Defendant with the Michael Nishi of the traffic abstract. The State presented no evidence of Defen-

dant's driver's license number or social security number or birth date that could be compared with information appearing on the traffic abstract.

*Id.* at 528, 852 P.2d at 482 (internal quotation marks, brackets, ellipsis, and citation omitted). In other words, we joined the second line of authorities in holding that the fact that the defendant had the identical name with an individual who had been previously convicted was insufficient, in and of itself, to authorize application of the enhanced punishment statute. Other evidence tying the defendant to the previously convicted individual is required.

### B.

■ In this case, we conclude that the evidence in the record was sufficient to establish, beyond a reasonable doubt, that Defendant had a prior prostitution conviction.

At trial, Honolulu Police Officer Daniel Bean (Officer Bean) testified on direct examination that he was assigned to special undercover duty on June 16, 1997 and arrested an "Omi Pantoja" on that date. He identified Defendant in court as the "Omi Pantoja" he had arrested. On cross-examination, Officer Bean confirmed that "Miss Pantoja" was the individual he arrested on June 16, 1997:

> [DEFENSE COUNSEL] That night when you arrested Miss Pantoja, didn't you ask her about an individual named Martin?
>
> [OFFICER BEAN] First of all, I think it's an afternoon case, if I'm not mistaken, around one o'clock.
>
> [DEFENSE COUNSEL] Afternoon. I stand corrected, an afternoon case.
>
> \* \* \* \* \* \*
>
> [DEFENSE COUNSEL] Now, when you arrested her, did Officer Lau—Acting Sgt. Lau appear during the course of the arrest?
>
> [OFFICER BEAN] Yes, sir.

Defendant testified that her name was Omi Pantoja, the same name as the person identified on the abstract introduced into evidence. Defense counsel addressed Defendant as "Miss Pantoja" throughout his questioning of her. Furthermore, Defendant admitted that

she was arrested by Officer Bean on June 16, 1997.

According to the abstract, the Omi Pantoja who had a prior conviction for the same offense of prostitution was female, her date of birth was "8/31/75," she was born in New York, and her race was "O" (presumably, "other"). Additionally, she weighed 135 pounds, her height was "506" (presumably, 5'6"), and her social security number was 103–56–2260. In other words, the abstract, unlike the traffic abstract in *Nishi*, contained physical identifying information about the individual referred to in the abstract. Because Defendant was in the courtroom, the district court had the opportunity to evaluate whether Defendant met the physical description of the Omi Pantoja referred to in the abstract.[3]

In addition, the abstract set forth the details of four offenses for which "Omi Pantoja" had been arrested,[4] as well as the disposition or current status of those offenses. Included among the four offenses was the June 16, 1997 prostitution offense which Defendant had just been convicted of violating. According to the official OBTS/CCH system records,[5] therefore, Defendant was the same "Omi Pantoja" who had committed the prior offenses.

Finally, we observe that the name "Omi Pantoja" is rather unusual, at least in Hawai'i. Courts in other jurisdictions have recognized that the fact that a defendant has a name that is uncommon or unusual for a particular locality can be cogent evidence that the defendant is the same individual as one with the same name who has a prior conviction. *See, e.g., Hefferman v. United States*, 50 F.2d 554 (3d Cir.1931); *State v. Bizer*, 113 Kan. 731, 216 P. 303 (1923); *Hollander v. State*, 82 Nev. 345, 418 P.2d 802 (1966); *State v. Aime*, 62 Utah 476, 220 P. 704 (Utah 1923).

II. Whether the Absence of Evidence that Defendant Was Represented by Counsel or Knowingly Waived Representation at the Time of Her Prior Prostitution Conviction Precluded the District Court From Sentencing Defendant as a Subsequent Prostitution Offender.

The record in this case is silent as to whether Defendant was represented by counsel or waived her right to counsel at the time of her prior conviction. In light of this deficiency, we conclude that the district court improperly sentenced Defendant as a subsequent prostitution offender.

In *State v. Afong*, 61 Haw. 281, 602 P.2d 927 (1979), the Hawai'i Supreme Court held that where a statute subjects a defendant to increased punishment by virtue of a prior conviction,[6] "[i]t is essential . . . that evidence

---

3. It would have been preferable if the District Court of the First Circuit had stated, on the record, that Defendant matched the physical description of the "Omi Pantoja" referenced in the abstract.

4. The abstract stated that on October 5, 1995, Defendant had been arrested for prostitution, a petty misdemeanor, and Defendant's "DANC plea was dismissed." Additionally, Defendant was arrested for prostitution on April 2, 1996 and found guilty and sentenced to pay a $500 fine on July 11, 1996. Also, Defendant was arrested for disorderly conduct on November 26, 1996, but on January 30, 1997, Defendant "was discharged." Finally, the abstract indicated that on June 16, 1997, Defendant was arrested for prostitution, a petty misdemeanor, and this case was continued.

5. We note that pursuant to HRS chapter 846, the Hawai'i Criminal Justice Data Center (the data center) is "responsible for the collection, storage, and dissemination of criminal history record information by criminal justice agencies[.]" HRS § 846–2.5(a) (Supp.1998). Additionally, the attorney general, to whom the data center reports, "shall select and enforce systems of identification, including fingerprinting, without the necessity of a court order, of all adults arrested for a criminal offense . . . and who have been convicted[.]" HRS § 846–2.5(b) (Supp.1998). Also, HRS § 846–3 (1993) requires "[t]he chiefs of police of the counties of the State and agencies of state and county governments having powers of arrest" to "furnish the data center with descriptions of all such persons who are arrested by them for any felony or misdemeanor . . . to be reported for the proper administration of criminal justice."

6. The statute in question in *State v. Afong*, 61 Haw. 281, 602 P.2d 927 (1979), was Act 181, Haw. Sess. Laws 1976, codified as HRS § 706–606.5, which required that persons convicted of certain offenses be sentenced to mandatory minimum prison terms:

Sentencing of repeat offenders. Notwithstanding section 706–669 and any other law to the contrary, any person convicted under sections

upon which the sentencing court is asked to rely to determine ... the fact of legal representation or the waiver thereof is properly presented to the court for its consideration." *Id.* at 284, 602 P.2d at 929. The supreme court also instructed: "Unless conceded by the defendant, the state is required to show, by evidence satisfactory to the court, ... the fact of the defendant's ... representation by counsel, or the waiver thereof, at the time of his [or her] prior conviction." *Id.* at 282–83, 602 P.2d at 929. *In accord State v. Freitas,* 61 Haw. 262, 602 P.2d 914 (1979); *State v. Caldeira,* 61 Haw. 285, 602 P.2d 930 (1979).

The State argues that it was not required to establish that Defendant was represented by counsel or had waived such representation at the time of her prior conviction because at trial, Defendant never raised a challenge as to the uncounseled nature of her prior conviction.

In *State v. Sinagoga,* 81 Hawai'i 421, 444–45, 918 P.2d 228, 251–52 (App.1996), the majority held that in *ordinary* sentencing situa-

tions, a defendant who is provided with a pre-sentence report of his or her prior conviction upon which an enhanced prison sentence may be based is required, prior to sentencing, to raise a good-faith challenge to any prior conviction that the defendant believes was "uncounseled" and thus unreliable for sentence enhancement purposes. Otherwise, it will be presumed that the defendant was represented by counsel or waived such representation at the time the prior conviction was entered and that the conviction is reliable. *Id.* (Majority Opinion with respect to Part IV.B.4) at 447, 918 P.2d at 254.

■ In ordinary sentencing situations,[7] the sentencing court is given a great deal of discretion to fashion an "individualized" sentence, "fitted to the personal characteristics of the defendant," *State v. Huelsman,* 60 Haw. 71, 85, 588 P.2d 394, 403 (1978), *reh'g denied,* 60 Haw. 308, 588 P.2d 394 (1979), and "the particular circumstances of [the] defendant's case." *Keawe v. State,* 79 Hawai'i 281,

707–701 relating to murder, 707–710 relating to assault in the first degree, 707–720 relating to kidnapping, 707–730 relating to rape in the first degree, 707–733 relating to sodomy in the first degree, 708–810 relating to burglary in the first degree, 708–840 relating to robbery in the first degree, 712–1241 relating to the promoting of a dangerous drug in the first degree, 712–1242 relating to the promoting of a dangerous drug in the second degree, or 712–1244 relating to the promoting of a harmful drug in the first degree, who has a prior conviction for the same offense in this or another jurisdiction, shall be sentenced for each conviction after the first conviction to a mandatory minimum period of imprisonment without possibility of parole during such period as follows:
    (1) Second conviction for the same offense— 5 years;
    (2) Third conviction for same offense—10 years.
The sentencing court may impose the above sentences consecutive to any other sentence then or previously imposed on the defendant. 61 Haw. at 282, 602 P.2d at 928 (emphasis in original omitted).

7. In Part IV.B.4 of the opinion in *State v. Sinagoga,* 81 Hawai'i 421, 918 P.2d 228 (App.1996), the majority identified three enhanced sentencing situations in which the Hawai'i Supreme Court has applied ordinary sentencing principles: (1) sentences under HRS § 706–606.5 (1993) pertaining to mandatory minimum terms of imprisonment; (2) sentences under HRS § 706–660.1 (1993) pertaining to mandatory minimum terms of im-

prisonment in cases involving firearms; and (3) sentences under HRS § 706–668.5 pertaining to consecutive sentences of imprisonment.

In each of the foregoing situations, however, the relevant statute vested discretion in the sentencing judge as to whether to impose the enhanced sentence. *See, e.g.,* HRS § 706–606.5(4) ("The court *may* impose a lesser mandatory minimum period of imprisonment without possibility of parole than that mandated by this section where the court finds that strong mitigating circumstances warrant such action." (Emphasis added.)); HRS § 706–660.1(1) ("A person convicted of a felony, where the person had a firearm in the person's possession or threatened its use or used the firearm while engaged in the commission of the felony, whether the firearm was loaded or not, and whether operable or not, *may* in addition to the indeterminate term of imprisonment provided for the grade of offense be sentenced to a mandatory minimum term of imprisonment without possibility of parole or probation...." (Emphasis added.)); HRS § 706–668.5(1) ("If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an unexpired term of imprisonment, the terms *may* run concurrently or consecutively." (Emphasis added.)).

In contrast, the sentencing judge in this case did not have any discretion as to whether to impose an enhanced sentence, provided the requisite prior prostitution conviction was established.

285, 901 P.2d 481, 485 (1995) (quoting *State v. Valera*, 74 Haw. 424, 848 P.2d 376, *reconsideration denied*, 74 Haw. 650, 853 P.2d 542 (1993)). Therefore, "[i]n evaluating the defendant's character and scope of criminality and in predicting his [or her] future conduct, the sentencing court . . . may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he [or she] may consider, or the source from which it may come." *State v. Alexander*, 62 Haw. 112, 118, 612 P.2d 110, 114 (1980) (internal quotation marks and citation omitted) (quoting *United States v. Grayson*, 438 U.S. 41, 50, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978)). A court may consider, for example, arrest reports relating to a defendant's prior arrests, *State v. Murphy*, 59 Haw. 1, 21, 575 P.2d 448, 461 (1978), a defendant's juvenile record as set forth in a presentence report, *State v. Nobriga*, 56 Haw. 75, 527 P.2d 1269 (1974), and other hearsay "information furnished to [the court] in a presentence diagnosis and report." *State v. Kamae*, 56 Haw. 628, 637, 548 P.2d 632, 638 (1976).

■ This case, however, does not involve an ordinary sentencing situation. HRS § 712–1200(4)(b) mandated the district court to sentence Defendant to pay "a fine of $500" and serve "a term of imprisonment of thirty days, without possibility of deferral of further proceedings . . . [or] suspension of sentence of probation[,]" as long as Defendant was a subsequent prostitution offender. The court below therefore had no option but to impose a stiffer sentence on Defendant if she qualified as a "subsequent prostitution offender." In other words, the sentence to which Defendant was subject was "purely retributive" in that "all consideration of rehabilitation has been rejected." *Huelsman*, 60 Haw. at 86, 588 P.2d at 404. Because the district court had no discretion in imposing the stiffer sentence on Defendant once it was established that she was a subsequent prostitution offender, the strictures of *Afong* apply to this case. Consequently, Defendant was not required to raise a good-faith challenge to the prior conviction in order to trigger the State's burden to prove that Defendant was represented by counsel or waived such representation at the time of Defendant's prior conviction. That burden was upon the State in the first instance.

## CONCLUSION

In summary, there was substantial evidence in the record that Defendant was a subsequent prostitution offender. However, because the record is silent as to whether Defendant was represented by counsel or waived such representation at the time of her prior prostitution conviction, Defendant was improperly sentenced as a subsequent prostitution offender.

Accordingly, we vacate the sentence portion of the September 9, 1997 Judgment and remand for resentencing.

Concurring Opinion of ACOBA, J.

First, I concur with the majority's conclusion that evidence in the record established, beyond a reasonable doubt, that Defendant–Appellant Omi Pantoja (Defendant) had a prior prostitution conviction. However, I respectfully express serious reservations about the majority's analysis of this issue as it may affect future cases.

Second, I believe the record fails to demonstrate that Defendant's prior prostitution conviction was counseled, and thus the sentence must be vacated and the case remanded for resentencing. The majority adopts this position, but on rationale I cannot assent to.

### I.

#### A.

As to the first issue, I do not agree with the majority's emphasis on certain discrete factors in concluding that Defendant was the person described in the "Offender Identification Summary" (the abstract). These factors are elevated beyond the well-established and comprehensive rule already in place, and thus, invite confusion as to the appropriate standard to be applied.

B.

The majority relies on the abstract[1] because it "contained physical identifying information" and then asserts that "[b]ecause Defendant was in the courtroom, the [D]istrict [C]ourt [of the First Circuit, Honolulu Division, (the court) ] had the *opportunity* to evaluate whether Defendant met the physical description of the Omi Pantoja referred to in the abstract." Majority opinion at 1086 (emphasis added) (footnote omitted). But, the fact that the court had the "opportunity" to do so is not linked to any proof in the record. There is nothing there to support the conclusion that the court actually compared the physical description contained in the abstract with Defendant's appearance. The majority, in a footnote, concedes that it "would have been preferable if the [court] had stated, on the record, that" the description matched the Defendant. Majority opinion at 1086 n.3. This implies that the court merely neglected to announce its finding, an implication not borne out by the record.

There is no evidence that at her sentencing hearing Defendant appeared to be of the requisite age, height, or weight stated in the abstract. Nothing was introduced to prove she was born at the stated place of birth. The abstract's description of the "offender's" race as being "O" was of no probative value.

I see very little factual basis for relying on racial factors. As the Hawai'i Supreme Court has noted, "[g]enerally races, as selected populations differing in the frequency of occurrence of particular inherited characteristics, possess measurable physical traits *which overlap considerably between groups of people.*" *Almeida v. Correa,* 51 Haw. 594, 602 n. 9, 465 P.2d 564, 570 n. 9 (1970) (emphasis added). Thus,

> [t]he fact that [Hawai'i] represents a unique population, where interracial unions are common, only underscores the need for a focused examination of "racial characteristics" by the fact finder under expert guidance. *See* A. Montagu, *Human Heredity* 57 (2d ed.1963); Morton, Chung, Mi, *Genetics of Interracial Crosses in Hawaii* (Monographs in Human Genetics 1967). Most anthropologists agree that the Mongoloid, European and Negroid features are all "blended" in the Polynesian. *See* E. Hooton, *Up From the Ape* 616 (2d ed.1946).

*Id.* For similar reasons, I cannot agree that "the name 'Omi Pantoja' is rather unusual, at least in Hawai'i." Majority opinion at 1086. Given the racial and ethnic diversity of Hawai'i and its global crossroads location, I would reject an uncommon name test.

II.

A.

Rather, the general rule to be applied in this state is that the prosecution must prove "the defendant being sentenced to be the same person who was previously convicted." *State v. Nishi,* 9 Haw.App. 516, 528, 852 P.2d 476, 482 (1993). In *Nishi,* this court observed that " '[u]nless conceded by the defendant, the [S]tate is required to show ... the fact of the defendant's prior conviction[.]' " *Id.* (quoting *State v. Afong,* 61 Haw. 281, 282–83, 602 P.2d 927, 929 (1979)).

In *State v. Holbron,* 78 Hawai'i 422, 895 P.2d 173, *reconsideration denied,* 79 Hawai'i 424, 903 P.2d 729 (App.1995), the fact of a prior conviction was an element of the crime charged. A copy of a prior judgment was offered to prove the defendant's prior conviction, without any other evidence establishing that defendant was the person referred to in the judgment. We said that "the State should have obtained ... testimony or evidence tying [the d]efendant to the [prior] judgment." *Id.* at 429–30, 895 P.2d at 180–81. Similarly, in *State v. Samonte,* 83 Hawai'i 507, 540, 928 P.2d 1, 34 (1996), the Hawai'i Supreme Court held that "[e]ven when a redacted copy of a judgment of conviction has been properly authenticated ... *the prosecution must also adduce other testimony or evidence connecting the defendant to the previous judgment of conviction.*" (Emphasis added.)

1. Because the issue is not raised, I do not reach the question of whether the "Offender Identification Summary" was an appropriate record from which a conviction may be proven or whether an appropriate foundation was established for its consideration in this case.

Thus, on appeal, this court's inquiry should focus on whether Plaintiff–Appellee State of Hawai'i (the State) has "identified the defendant being sentenced to be the same person who was previously convicted." *Nishi*, 9 Haw.App. at 528, 852 P.2d at 482. Such an inquiry rests on an evaluation of all of the circumstances in the case.

### B.

In my view, the relevant circumstances follow. The case was called as "Case 12A, Omi Pantoja" on the court's calendar. The prosecutor read the charge against Defendant as being "the petty misdemeanor offense of prostitution in violation of [s]ection 712–1200 sub-section (1) of the Hawai'i Revised Statutes [ (HRS) ]" committed "on or about June 16, 1997 in ... the City and County of Honolulu."

Honolulu Police Department (HPD) Officer Daniel Bean testified he was a Honolulu police officer on the prostitution detail and that Defendant was Omi Pantoja, the person he had arrested on June 16, 1997, while on duty.

In the defense case, defense counsel confirmed with HPD Officer Wilson Lau that "Miss Pantoja was arrested on ... June 16, 1997."

When Defendant testified, she stated her full name was "Omi Pantoja."

With respect to the foregoing matters on the record, the abstract stated, in pertinent part, as follows:

NAME: PANTOJA, OMI

. . . .

2. ON 04/02/96, SUBJECT WAS ARRESTED BY THE HONOLULU POLICE DEPT FOR PROSTITUTION (HRS 712–1200 [ (1993) ] ) WHICH IS CODED AS BEING A PETTY MISDEMEANOR. ON 07/11/96, SUBJECT WAS FOUND GUILTY. ON 07/11/96, SUBJECT WAS SENTENCED TO $500 FINE. . . .

. . . .

4. ON 06/16/97, SUBJECT WAS ARRESTED BY THE HONOLULU POLICE DEPT FOR PROSTITUTION (HRS 712–1200) WHICH IS CODED AS BEING A PETTY MISDEMEANOR. ON 06/17/97, THE CASE WAS CONTINUED ... (HONOLULU DISTRICT COURT). . . .

The information in the abstract was corroborated in the record.

The previous prostitution conviction of July 11, 1996 reported in the abstract referred to the "subject." The subject on the abstract had the same name as Defendant, who testified she was "Omi Pantoja." The subject had been previously convicted on July 11, 1996, "for prostitution [under] HRS [§ ] 712–1200[ ] ... coded as ... a petty misdemeanor."

The subject was again arrested by HPD on June 16, 1997, the date on which the HPD officers testified they arrested Defendant. The charge, according to the abstract, was for the same offense, HRS section, and grade for which Defendant was charged at trial and for which the subject had been convicted on July 11, 1996. The abstract refers to "(HONOLULU DISTRICT COURT)," the court where Defendant's trial took place.

The foregoing circumstances were sufficient, in my opinion, to establish that Defendant was the "subject" referred to in the abstract, and to prove Defendant was the same person who had previously been convicted of prostitution.

### III.

With respect to the second issue, I believe that Defendant's sentence should be vacated and remanded because the record fails to demonstrate that Defendant had the benefit of counsel or had properly waived counsel in the prior prostitution conviction proceedings in accordance with our holding in *State v. Sinagoga*, 81 Hawai'i 421, 435, 918 P.2d 228, 242 (App.1996).

While neither party directly raises this issue on appeal, I would recognize plain error in this case[2] because the court itself was

---

2. The majority seemingly raises this issue *sua sponte*. At the time of sentencing, neither the

District Court of the First Circuit, Honolulu Division (the court) nor the parties raised the issue of

duty-bound to "ensure that any prior felony, misdemeanor, and petty misdemeanor conviction relied on was a counseled one." *Id.*

### A.

In this case, the abstract itself did not indicate whether Defendant was represented by counsel or waived her right to counsel at the time of her prior conviction. After receiving the abstract and hearing argument on the issue of whether the abstract sufficiently identified Defendant as the person in the abstract, the court simply ruled as follows:

> All right. The [c]ourt is in receipt of the certified abstract of one, Omi Pantoja, social security number, 103–56–2260, setting forth . . . *[D]efendant's conviction history for this offense in violation of [HRS § ] 712–1200. And the [c]ourt is prepared to sentence . . . [D]efendant in something other than a first conviction.*
>
> The sentence is a $500.00 (five hundred dollar) fine and 30 (thirty) days imprisonment. . . .

(Emphasis added.)

In *Sinagoga*, we concluded that "the current rule in our jurisdiction . . . prohibits the use of an uncounseled misdemeanor conviction as a basis for the imposition *or enhancement* of a prison sentence." 81 Hawai'i at 434, 918 P.2d at 241 (emphasis added). This holding "appl[ies] to uncounseled petty misdemeanors as well." *Id.* Our reason for adopting this rule was "that in the absence of a valid waiver of counsel, an uncounseled conviction is not reliable for purposes of im-

posing or enhancing a sentence of imprisonment." *Id.*

### B.

We further observed that when prior convictions are " *'used to enhance the penalty for another offense,* the record in each case must show that the defendant was represented by counsel during the alleged prior offenses of which he [or she] was convicted, or that he [or she] intelligently and voluntarily waived his [or her] constitutional right to counsel.' " *Id.* at 432, 918 P.2d at 239 (italicized emphasis and some brackets in original; underscored emphasis added) (quoting *State v. Morishige*, 65 Haw. 354, 367, 652 P.2d 1119, 1129 (1992) (internal quotation marks, brackets, ellipses, and citation omitted)). This is consistent with the Hawai'i Supreme Court's direction that "[u]nless conceded by [a] defendant, the [S]tate is required to show . . . the fact of [a] defendant's representation by counsel, or the waiver thereof, at the time of his [or her] prior conviction." *Afong*, 61 Haw. at 282–83, 602 P.2d at 929 (citations omitted). Further, " '[p]resuming waiver of counsel from a silent record is impermissible.' " *State v. Kamae*, 56 Haw. 628, 638, 548 P.2d 632, 639 (1976) (quoting *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962)).

There is no question that Defendant's prior conviction was offered by the State to enhance the penalty for her present conviction. The court used the prior conviction as the basis for imposing the greater penalty. Under *Sinagoga*, the court was required to ensure that the record demonstrated Defendant was represented by counsel on the prior

---

whether Defendant–Appellant Omi Pantoja (Defendant) had been represented by or waived her constitutional right to counsel at the time of her prior convictions.

> On appeal, Defendant alludes to the issue:
> In construing the application of the recidivist statutes consistent with due process, [Hawai'i c]ourts have always held that before enhanced sentencing may be imposed, the prior conviction must be established by satisfactory evidence and the Defendant *must have been represented by counsel or knowingly waive[d] representation at the time of the prior conviction.*

(Citations omitted; emphasis added.)

With respect to the foregoing statement, Plaintiff–Appellee State of Hawai'i (the State) observes that Defendant "states nothing else in her [o]pening [b]rief on this topic," and, thus, "the State will not respond to any of Defendant's complaints on that irrelevant matter. *The State maintains[,] instead[,] that Defendant's prior conviction was established by satisfactory evidence as the primary issue in the State's [a]nswering [b]rief."* (Emphasis added.)

Contrary to the State's position, the obligation was on the court to find that the prior conviction was counseled before imposing a sentence of imprisonment premised on that prior conviction. Thus, it is my belief that this court may properly recognize plain error and address the issue.

conviction. 81 Hawai'i at 435, 918 P.2d at 242. The record discloses that the court failed to do that.

## IV.

### A.

In Part IV.B.4. of the *Sinagoga* opinion,[3] the majority adopted a procedure for lower courts to follow in "ordinary sentencing" situations where "there is a possibility that the court may use [a] defendant's prior conviction(s) as a basis for the imposition or enhancement of a prison sentence." 81 Hawai'i at 447, 918 P.2d at 254. Under that procedure, after the court notifies the defendant of any prior conviction(s), the defendant is required to "respond with a good faith challenge on the record stating, as to each challenged conviction, the basis or bases for the challenge." *Id.* While the *Sinagoga* challenge procedure would seemingly apply here, the majority disavows it and requires the State to prove a counseled conviction on the authority of *Afong.*

In doing so, the majority reasons that because the sentence here is a mandatory one, this case does not involve an "ordinary sentencing" situation, but is akin to *Afong* where mandatory minimum prison terms for "repeat offenders" were prescribed under HRS § 706-606.5 (1993). This assertion, however, directly contradicts its statement in *Sinagoga* that the good faith challenge procedure applies "with respect to *ordinary sentencing situations such as* ... [ ]*mandatory minimums* [.]"[4] 81 Hawai'i at 444, 918 P.2d at 251 (emphasis added). Nevertheless, to the extent that this part of the majority's holding may be read as partially overruling the *Sina-*

goga challenge requirement, I would concur, but on the ground that all prior convictions relied on in imposing a prison sentence must be counseled. *See* discussion, *infra.*

### B.

With all due respect to the majority, I see no gain in the distinction drawn by it. In *Sinagoga*, we recognized that only counseled prior convictions can be relied on by a court in imposing or enhancing a sentence of imprisonment as a matter of constitutional imperative. 81 Hawai'i at 435, 918 P.2d at 242. Our opinion in *Sinagoga* was based on the premise that "under our *constitution*, an uncounseled conviction is not reliable for purposes of sentencing." *Id.* (emphasis added).

### V.

Because the majority reaffirms the good faith challenge requirement, I must reiterate my disagreement with this procedure:

> Since it is ordinarily the State which seeks to subject the defendant to an enhanced sentence, then it is *the State which would know in advance of sentencing, whether it will rely on prior convictions at the sentencing hearing, and if so, which ones.* I see no gain achieved in first requiring a defendant to make a "good faith challenge" before the State is put to the task that it would have to undertake anyway. The State is obviously the only party which can define that part of a defendant's criminal record it will use to support its request for [enhanced] sentencing. . . .
>
> . . . I foresee a great deal of unnecessary time and expense engendered for

---

3. In *State v. Sinagoga*, 81 Hawai'i 421, 437, 918 P.2d 228, 244 (App.1996), all members of our court were in agreement except with respect to Part IV.B.4. of the opinion.

4. In footnote 7, the majority apparently attempts to distinguish its statement in *Sinagoga* from the present case by noting that the statutes it discussed in that case "vested discretion in the sentencing judge as to *whether to impose the enhanced sentence.*" Majority opinion at 1087 (emphasis added.)

  I do not believe that this is a correct statement, at least with respect to Hawai'i Revised Statutes (HRS) § 706-606.5 (1993) and *State v. Afong*, 61

Haw. 281, 602 P.2d 927 (1979), which concerned HRS § 706-606.5. The majority cites to HRS § 706-606.5(4), which provides, in relevant part, that "[t]he court *may* impose a lesser *mandatory minimum* period of imprisonment without possibility of parole than that mandated by this section where the court finds that strong mitigating circumstances warrant such action." (Emphases added.) Reading HRS § 706-606.5(1) and (4) in conjunction with each other, it is clear that the sentencing court has some discretion in determining the length of the sentence imposed, but absolutely no discretion as to whether to impose a mandatory sentence.

both the State and the defense by the majority's proposal, *since the effort the defense expends in satisfying its "good faith challenge" will ultimately have to be duplicated by the State in verifying the prior convictions it relies on, as it must because of our holding prohibiting reliance on uncounseled convictions. ... It appears rational, logical, and efficient, to require the proponent of any evidence of a prior conviction to ascertain its validity and to carry the burden of going forward with proof in that regard. ...*

... The majority also ignores the reality that the State and the court, through its probation office, as opposed to an individual defendant, have greater and easier access to law enforcement and court records. Ultimately, the administrative burden on the State of proving that the prior convictions relied on were counseled is minimal. ...

More importantly, however, *I question the fairness of requiring a defendant, in effect, to disprove the State's sentencing case. In the framework of HRS chapter 706, the burden is placed on the State to produce proof of the relevant prior convictions whenever prior convictions are used as a basis for an increased sentence.* Ordinarily, the State would have the responsibility of presenting certified evidence that a prior conviction was a counseled one. *State v. Freitas,* 61 Haw. 262, 277, 602 P.2d 914, 925 (1979).

Placing the burden on the State is logically consistent with the fact that it is the State which seeks to enlarge an ordinary sentence, and thus, for the reasons of economy and fairness, it is the State which should come forward with proof of the validity of the relevant prior convictions. *To require otherwise shifts the burden of going forward with the proof onto the defendant, contrary to the Hawai'i Penal Code's procedural approach to the enlargement of ordinary sentences.*

*Id.* at 435–36, 918 P.2d at 242–43 (Acoba, J., dissenting in Part IV.B.4.) (footnotes omitted) (emphases added). *See also* Casenote, *State v. Sinagoga: The Collateral Use of Uncounseled Misdemeanor Convictions in Hawai'i,* 19 U. Haw. L.Rev. 813 (Fall 1997) (authored by Shirley M. Cheung) (suggesting that in contrast to the majority's sentencing procedure set forth in *Sinagoga,* the "better rule" would be to "place the burden on the [State]" to prove that prior convictions had been counseled, or that the defendant had voluntarily waived his or her right to representation).

The majority now also affirms what it had only previously intimated, that is, that placing the burden on the defendant to challenge the convictions establishes a *presumption* that all convictions are counseled unless otherwise demonstrated by the defendant. Majority opinion at 1087. My objections remain the same:

> Under the presumptive approach adopted by the majority, a defendant's failure to raise an uncounseled conviction constitutes, in effect, a *waiver* of his state constitutional right to effective assistance of counsel, without provision for the required procedures for the knowing, voluntary and intelligent waiver of the right to counsel *and* permits the State to use such a conviction, *even if uncounseled,* in the sentencing process.

*Sinagoga,* 81 Hawai'i at 437, 918 P.2d at 244 (Acoba, J., dissenting in Part IV.B.4.) (emphases in original).

I believe that Defendant's sentence should be affirmed if the State proves the prior prostitution conviction was counseled. If this showing is not made, then Defendant should be resentenced.